**In the Matter of Sidney J. CLARK.**

Court of Chancery of Delaware.

New Castle.

June 11, 1969.

 

C. Edward Duffy, Chief Deputy Atty. Gen., and John G. Mulford, Deputy Atty. Gen., for the State of Delaware.

James M. Tunnell, Jr., Wilmington, and Paul Welsh, for Sidney J. Clark.

DUFFY, Chancellor:

On November 6, 1968 this Court appointed permanent Receivers for Sidney J. Clark, with authority and direction to take charge of and close up the office in which he had engaged in the practice of law.[1] An order of Court directed Clark to "turn over and deliver to the said Receivers all books,

[1]. Thereafter Clark was ordered disbarred by the Supreme Court. 250 A.2d 505 (1969).

papers, documents, property and effects" in any way relating to his business. He did so. Since then Clark has been indicted by the Grand Jury and charged with embezzling moneys which belonged to his clients.

Acting under the provisions of 29 Del.C. § 2505, the Attorney General, on March 18, issued six subpoenas *duces tecum* to the Receivers directing that they produce receipts, correspondence, memoranda and other papers with respect to certain transactions in which Clark had acted as attorney.[2] The Receivers applied to the Court for instructions, and on March 19 the Court issued a rule upon Clark to show cause why the Receivers should not be instructed to honor the subpoenas in all respects. Clark appeared at the time fixed for return of the rule and objected to a turnover of his records on the ground that production and disclosure to prosecuting authorities would violate his privilege against self-incrimination. The Attorney General appeared also and joined issue on these contentions.

This is the decision on Clark's objections to production in accordance with the subpoenas.

I

■ We begin with the undisputed proposition that the records which are sought could not be subpoenaed if they were in Clark's physical possession; this is so because the seizure or compulsory production of a man's private records from his possession, to be used in evidence against him, is equivalent to compelling him to be a witness against himself and is therefore within the prohibition against self-incrimination found in the Fifth Amendment. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). That amendment is now binding on the States through the Fourteenth Amendment. But the records are not in

Clark's possession. They are in *custodia legis*. 75 C.J.S. Receivers § 104. What does this do to Clark's privilege?

Relying on In re Hess, 134 F. 109 (E.D. Pa.1905) and Blum v. State, 94 Md. 375, 51 A. 26, 56 L.R.A. 322 (1902), Clark argues that his loss of possession is not significant and that the privilege is still available to him.

Much of the litigation involving a question of this nature has pertained to bankruptcy proceedings, and it provides a useful guide. In *Hess* an adjudicated bankrupt, asserting the privilege against self-incrimination, refused to surrender possession of his books to the trustee. The privilege was thus asserted while the bankrupt still had possession of the records and before they were in *custodia legis*. The Court upheld the bankrupt's right to raise the privilege even after adjudication but commanded him to produce the books before the Court or referee in bankruptcy so that it could be determined if his claim of privilege was well founded.

In *Blum* individual defendants were tried and convicted on charges of acquiring moneys by fraud. The books and records of their business were admitted in evidence against them. The records had previously been surrendered to a receiver of their firm pursuant to a court order in a voluntary receivership. No assertion of the privilege against self-incrimination was made before the receiver took possession of the records. The Maryland Court of Appeals reversed the conviction. In holding that the admission of the defendants' records against them violated their privilege against self-incrimination, the Court stated:

" * * * The purpose of a receivership is the preservation and proper disposition of the subject of litigation. The receiver is not the representative of the state, nor even of the creditors, but the hand of the court, whose control is ex-

2. 29 Del.C. § 2505(a) reads in part:
  "The Attorney General * * * may issue process to compel the attendance of witnesses at the office of the Attorney General, or at such other place as he * * * designates."

erted for the benefit of those ultimately found entitled to the subject of litigation, and not to aid the state in making out a case in a criminal prosecution. It cannot, therefore, be claimed that the order appointing receivers could give, or was designed to give, any such power over the books as is here claimed, or that it could operate to change a rule of evidence in the administration of the criminal law. The effect of the order upon the admission of the books in this case can have no other or greater effect than an express order directed to the traversers, if there were no receivership, commanding them to produce these books and papers, to be used in evidence for the state."

The conclusion in *Hess* seems inconsistent with later bankruptcy cases which hold that once title to the bankrupt's assets, including his books and records, passes by operation of law to the trustee pursuant to Section 70(a) of the Bankruptcy Act, 11 U.S.C. § 110, the bankrupt can no longer assert the privilege against self-incrimination with respect to those documents. See 9 Remington on Bankruptcy (6 ed. 1955), § 3514. But any inconsistency is apparent rather than real because the privilege has been successfully claimed *before* a turnover to a receiver or trustee, In re Harris, 164 F. 292 · (S.D.N.Y.1908) (citing *Hess*), but denied when it was raised for the first time after transfer of records to a receiver or trustee. Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913); Dier v. Banton, 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915 (1923); In re Fuller, 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923); Bisno v. United States, 229 F.2d 711 (9 Cir. 1961).

The rationale underlying these latter decisions is best expressed by Justice Holmes in the *Johnson* case:

"It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu,* as this did, the use of it in court does not compel the defendant to be a witness against himself."

And in *Dier* Chief Justice Taft wrote:

" * * * We * * * hold that the right of the alleged bankrupt to protest against the use of his books and papers relating to his business as evidence against him ceases as soon as his possession and control over them pass from him by the order directing their delivery into the hands of the receiver and into the custody of the court. This change of possession and control is for the purpose of properly carrying on the investigation into the affairs of the alleged bankrupt and the preservation of his assets pending such investigation, the adjudication of bankruptcy vel non, and, if bankruptcy is adjudged, the proper distribution of the estate. It may be that the allegation of bankruptcy will not be sustained, and in that case the alleged bankrupt will be entitled to a return of his property, including his books and papers, and, when they are returned, he may refuse to produce them and stand on his constitutional rights. But while they are, in the due course of the bankruptcy proceedings, taken out of his possession and control, his immunity from producing them, secured him under the Fourth and Fifth Amendments, does not inure to his protection. He has lost any right to object to their use as evidence because, not for purpose of evidence, but in the due investigation of his alleged bankruptcy and the preservation of his estate pending such investigation, the control and possession of his books and papers relating to his business were lawfully taken from him."

■ Here Clark did not raise the privilege against self-incrimination before a turnover of his records to the Receivers. The privilege is asserted now, for the first time, when the State seeks examination of those records which, as I have already stated, are in the custody of the law. Analogizing to the bankruptcy cases leads inevitably to the conclusion that in such a situation Clark may not successfully claim the privilege.

Clark argues, however, that the above cases are no longer viable as a result of Murphy v. Waterfront Comm. of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In *Murphy* a state investigative body, having immunized a witness from prosecution under state law, sought to compel him to answer questions over his objection based on possible incrimination under federal law. The Court, speaking through Mr. Justice Goldberg, held that a witness could not thus be "'whipsawed into incriminating himself * * *'" in derogation of the fundamental Fifth Amendment policy not to subject persons suspected of crime "to the cruel trilemma of self-accusation, perjury or contempt." Clark, contending that the bankruptcy cases compel a bankrupt to submit to just such a situation, says that *Murphy* silently overruled *Johnson* and the later cases which follow its rule of law.

But in the long opinion, the Court did not even refer to *Johnson*. The most it did was to quote *Hess* in a footnote. *Murphy* simply held that where, unlike here, the privilege against self-incrimination has been timely asserted, "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." The Court cited *Hess* only to show what an assertion of the privilege against self-incrimination could validly be grounded upon. There is no indication that it was an attempt in any way to delineate a timely assertion of the privilege. In any event, I cannot say, on the basis of *Murphy* alone, that the rulings of the United States Supreme Court in *Johnson* (and the many cases which followed it) have been overruled and that the law is now established to the contrary.

Admittedly, there is an analogy between *Murphy* and this case. But, if that analogy is to be persuasive (and determinative) here, it must be on the premise that *Murphy* silently overrules *Johnson*, (which it does not even mention). But the only reasonable inference to be taken from what Justice Goldberg wrote is that he did not think he was disagreeing with Justice Holmes, who wrote *Johnson*, on a Fifth Amendment construction. Indeed, in his "Conclusions" Justice Goldberg wrote that "we now accept as correct the construction given the privilege by the English Courts and by Chief Justice Marshall and Justice Holmes." I think it is also worth noting that as late as 1961 the Ninth Circuit was quoting and applying *Johnson* in Bisno v. United States, supra.

This leaves the *Blum* case which supports Clark's argument. But two things must be said about that case. First, the Court was there concerned with the use of records in evidence at a criminal trial; inspection of records is the only issue before this Court. Second, while *Blum* has never been overruled, it is subject to doubt in light of later Maryland and federal cases. See Lawrence v. State, 103 Md. 17, 63 A. 96 (1906); Archer v. State, 145 Md. 128, 125 A. 744 (1924); Johnson v. United States, supra; and Dier v. Banton, supra. To the extent that *Blum* survives in Maryland, its conclusions are contrary to the weight of authority and I decline to follow them.

■ In summary, I conclude that the bankruptcy cases provide a useful and tested guide in this case involving a receivership resulting from insolvency. The rationale of those cases amounts to this: When a man is bankrupt (or insolvent)

other persons have rights in his property; in order to administer the property his records are needed and the law requires their turnover to a court-appointed officer; such a turnover takes place in the normal, routine administration of the estate (as it did here, without objection by Clark) so that it can be effectively managed; the Constitutional privilege against self-incrimination does not limit the use of those records thereafter (while they are in the custody of the Court); but a timely assertion of the privilege prior to transfer may result in a protective order preserving the privilege. As Justice Holmes said in *Johnson*, "A party is privileged from producing the evidence, but not from its production."

## II

I turn now to Clark's contention that one of the subpoenas is so broad and sweeping as to be unconstitutional. That subpoena directs the Receivers to produce:

"1. All accounting sheets, books of account, correspondence, records, cancelled checks, receipts, memoranda or other written documents concerning any transactions in which the said Sidney J. Clark received cash or other things of value on behalf of, or which were the property of any client.

"2. Any and all supporting documents with respect to the payment and/or receipts by the said Sidney J. Clark for, or on behalf of, any client.

"3. The office records and correspondence of the said Sidney J. Clark with any clients from whom he received money or other things of value, other than a fee."

Clark also points to a letter from the Receivers to the Court requesting instructions as to the subpoenas. Therein the Receivers characterized the subpoena under consideration as "a rather general subpoena which appears to be asking for all the records in * * * [our] possession, many of which in no way relate to the pending criminal action against Sidney J. Clark."

Clark relies on Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), wherein the Supreme Court held that an order for the production of books and records may be so sweeping as to constitute an unreasonable search and seizure in violation of the Fourth Amendment. The Court stated that the test to be applied in determining whether a subpoena *duces tecum* is so broad as to be violative of the Fourth Amendment is that of reasonableness.

"* * * Doubtless many, if not all, of these documents may ultimately be required, but some necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers. A general subpoena of this description is equally indefensible as a search warrant would be if couched in similar terms."

Clark contends that the State has made no attempt to meet the burden imposed on it by *Hale*.

Following *Hale*, the Delaware Supreme Court has held that the Constitution protects a person from "unreasonable searches and seizures, and a subpoena unlimited in scope is indefensible." In re Henry C. Eastburn & Son, Inc., 51 Del. (1 Storey) 446, 147 A.2d 921 (1959). But the test of reasonableness can only be applied on a case-by-case basis; it is not subject to definitive guidelines. Here it is readily perceivable that the documents sought in Items One and Two are specified with reasonable particularity. The third item, however, is not reasonably limited and there is an insufficient showing at this time to justify production of such a collection of papers. This being the case, I find that the third item is violative of the

Fourth Amendment's proscription against unreasonable searches and seizures.

Thus while the subpoena is unconstitutionally broad with respect to the third demand, its other two demands are good. In such a case the subpoena is valid so long as the good demands can be separated from the bad. Compare 2 Orfield, Criminal Procedure Under the Federal Rules, § 17.87. I conclude that the demands are separable and that the subpoena is therefore valid to the extent stated. The Receivers will be instructed to produce the records sought in the first and second paragraphs but not those in the third.

Order on notice.