In the Matter of ATTORNEY GENER-AL'S INVESTIGATIVE DEMAND TO Michael MALEMED, individually, and d/b/a Space Tech Industries, 922 New Road, Wilmington, Delaware.

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 5, 1984.

Decided: May 24, 1985.

Christopher J. Curtin, Deputy Atty. Gen., Dept. of Justice, Wilmington, for Office of Atty. Gen.

Richard David Levin, Collins J. Seitz, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, for petitioners.

O'HARA, Judge.

On June 20, 1984, the Office of the Attorney General of the State of Delaware ("Attorney General") issued an investigative demand, pursuant to 6 *Del.C.* § 2514, to Michael Malemed individually and doing business as Space Tech Industries ("petitioners").[1] The matter comes before the Court at this time on petitioners' motion, pursuant to 6 *Del.C.* § 2517, for a protective order limiting the scope of the investigative demand ("demand").

The stated purpose of the demand is to determine whether petitioners have committed violations of 6 *Del.C.* § 2513 [2] by engaging in:

> [m]isrepresentation in connection with the sale of products in Delaware by telephoning consumers and representing that they have won a prize when in fact there is no contest, and no "prize" is available except in connection with a sales presentation and the purchase of a huge quantity of soap products at a price in excess of the value of the soap and the offered "prize" e.g., a video recorder, microwave oven, etc.

The demand instructs petitioners to produce: 1) copies of all customer contracts executed by petitioners in Delaware; 2) copies of all cancellations of contracts executed by petitioners in Delaware, including any "Notice of Cancellation" forms required by 6 *Del.C.* Ch. 44; 3) copies and transcripts of each telephone message and tape used for solicitations in Delaware; 4) a retail price list of appliances sold in Delaware; 5) a wholesale price list of appliances sold in Delaware; 6) a price list of appliances quoted in sales talk; 7) a list of financing institutions used on behalf of customers; 8) documentation of petitioners'

**1.** Space Tech Industries is the trade name for JBM Enterprises, a Delaware corporation, engaged in the retail sale of home products and appliances.

**2.** 6 *Del.C.* § 2513 provides that:
(a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

corporate connection with the Kirby Vacuum Cleaner Company; 9) all explanatory literature used in connection with petitioners' sales; 10) all explanatory literature used in connection with the financing of petitioners' sales; 11) examples of all business forms used; and 12) any and all other documents used in connection with the sale or advertisement for sale of products in Delaware. The demand also commands petitioners to submit written answers to a schedule of interrogatories. The demand covers the time period from October 1, 1983 to June 20, 1984.[3]

Petitioners object to the demand on the grounds that it: 1) calls for the production of materials totally irrelevant to the stated focus of the investigation; 2) requires disclosure of trade secrets irrelevant to the stated purpose of the investigation; and 3) permits the Attorney General to use the demand as a basis for criminal charges. Specifically, petitioners request that the Court strike items 1), 2), 4), 5), 6), and 12) of the demand.[4] Petitioners also contend that an investigative demand cannot compel written answers to interrogatories and request that the Court strike the interrogatories submitted with the demand. The Court has concluded that petitioners' motion, in its entirety, must be denied.

The Consumer Fraud Act ("the Act"), 6 *Del.C.* § 2511 et seq., was enacted to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices. 6 *Del.C.* § 2512. Section 2512 provides that the Act shall be liberally construed and applied to promote its underlying purpose.

In accordance with its purpose § 2514 of the Act authorizes the Attorney General, subject to judicial approval,[5] to issue an investigative demand whenever he has rea-

son to believe that a person has engaged in, is engaging in, or is about to engage in an unlawful practice under 6 *Del.C.* 2513.[6] Section 2514 provides that a demand may require a person under investigation to:

(1) [f]ile a statement or report in writing under oath on such forms as the Attorney General may prescribe as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person;

(2) [a]nswer oral interrogatories at such places and times as the Attorney General may reasonably specify as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person; and

(3) [p]roduce the original or copy of any advertisement, merchandise or sample thereof, record, book, document, tabulation, map, chart, photograph, report, memorandum, communication, mechanical transcription, account or paper as the Attorney General may specify in his demand.

Section 2515, in pertinent part, requires that each investigative demand:

(1) [s]tate the nature of the conduct constituting the alleged violation ... which is under investigation and the provision of law applicable thereto;

(2) [d]escribe the class or classes of material to be produced thereunder with such definiteness and certainty as to permit such material to be fairly identified. . . .

Conversely, section 2516 provides that no investigative demand shall:

(1) [c]ontain any requirement which would be held to be unreasonable if con-

---

**3.** The demand provides, however, that if a document *prepared prior to October 1, 1983, is* necessary for a correct understanding of any document covered by the demand, such earlier document shall also be produced.

**4.** Petitioners also request that items 7) and 8) be stricken. *The Attorney General, however, has* indicated that petitioners have complied with

paragraphs 7) and 8) of the demand. Those items being moot, the Court declines to address them.

**5.** This Court approved the demand which is the subject of this motion.

**6.** See page 1 & note 2, supra.

tained in a subpoena issued by a court of this State in aid of a grand jury investigation of an alleged violation of this subchapter [6 *Del.C.* § 2511 et seq.]; or

(2) [r]equire the production of any evidence which would be privileged from disclosure if demanded by a subpoena issued by a court of this State in aid of a grand jury investigation of an alleged violation of this subchapter.

While the issues raised by petitioners' motion appear to be ones of first impression in this jurisdiction, § 2516 suggests that the Court should be guided by the standards governing grand jury investigations. Furthermore, the Attorney General, when exercising his investigatory powers, occupies a position not unlike the administrator of a governmental agency, and therefore, the standards applicable to administrative subpoenas also provide guidance. Accord *People Ex Rel. MacFarlane v. American Banco,* 194 Colo. 32, 570 P.2d 825 (1977). On that basis, the Court addresses petitioners' objections seriatim.

At the outset, the Court takes issue with petitioners' contention that failure to limit the demand would violate petitioners' Fifth Amendment privilege against self-incrimination. While the demand is captioned "[t]o Michael Malemed, individually, and d/b/a Space Tech Industries", it is apparent from the nature of the items sought that the investigation is directed at Space Tech Industries, a corporation.[7] Cf. *United States v. Reno,* 10th Cir., 522 F.2d 572 (1975) (subpoena *duces tecum* although directed to appellant individually called for production of corporate books). The Attorney General seeks corporate records and documents of Space Tech Industries, not personal papers of Michael Malemed. Indeed, the Attorney General maintains and petitioners do not dispute that the demand was served upon Michael Malemed as the only known agent for Space Tech Industries.

It is well established, as the Attorney General argues, that a corporation has no privilege against self-incrimination, see, e.g., *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *United States v. Reno,* supra; *People Ex Rel. MacFarlane v. American Banco,* supra; *In Re Blue Hen Country Network, Inc.,* Del.Super., 314 A.2d 197 (1973), and therefore, cannot assert such a privilege to forestall an investigation by the Attorney General pursuant to the Consumer Fraud Act. Accord *In Re Blue Hen Country Network, Inc.,* supra. Petitioners concede as much by their failure to respond to the Attorney General's argument. The privilege against self-incrimination is no bar to the instant demand.

Petitioners also argue that failure to limit the demand would violate the privilege against the disclosure of trade secrets. Delaware Rule of Evidence 507. Petitioners maintain that their customer contracts (item 1) of the demand) are essentially a "customer list", and therefore, a protected trade secret.

Even assuming *arguendo* that petitioners' contention is correct, and that trade secrets generally are not discoverable by administrative subpoena, contra *F.T.C. v. Green,* S.D.N.Y., 252 F.Supp. 153 (1966); *Federal Trade Commission v. Waltham Watch Company,* S.D.N.Y., 169 F.Supp. 614 (1959), citing *Federal Trade Commission v. Tuttle,* 2d Cir., 244 F.2d 605 (1957), cert. denied, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957); see generally Delaware Rule of Evidence 507,[8] the confidentiality of petitioners' "customer list" is assured. Cf. *Wearly v. F.T.C.,* D.N.J., 462 F.Supp. 589 (1978), vacated, 3d Cir., 616 F.2d 662 (1980), cert. denied, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980). The Attorney General has represented that he intends to contact petitioners' customers

---

7. See page 1 & note 1, supra.

8. Delaware Rule of Evidence 507 specifically provides that a person has a privilege to refuse

to disclose a trade secret "if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."

only on an individual basis and that the "list" will be disclosed to no one. The "list" is further protected by 29 *Del.C.* § 10002(d)(3) which provides that investigatory files are not public records within the purview of the Freedom of Information Act, 29 *Del.C.* § 10001 et al., and therefore, are not subject to inspection or copying under 29 *Del.C.* § 10003(a).

The cases cited by petitioners for the proposition that disclosure of trade secrets is enjoinable, *Data Gen. Corp. v. Digital Computer Controls, Inc.,* Del.Ch., 357 A.2d 105 (1975); *E.I. duPont deNemours & Co. v. American Pot. & Ch. Corp.,* Del. Ch., 200 A.2d 428 (1964), are distinguishable from the case *sub judice.* The referenced cases involved situations where plaintiffs' competitors sought to exploit allegedly protected property for their own commercial advantage, not situations, like the instant one, where the Attorney General sought, on behalf of the consuming public, certain documents to determine whether unlawful trade practices had been committed. The privilege against the disclosure of trade secrets is no bar to the production of petitioners' customer contracts. See generally *Lewandowski v. Danforth,* Mo.Supr., 547 S.W.2d 470 (1977), cert. denied, *Lewandowski v. Ashcroft,* 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977).

Having concluded that neither the privilege against self-incrimination nor the privilege against the disclosure of trade secrets is an effective defense against the Attorney General's demand, the Court must determine whether the items sought are otherwise proper. In *In Re Blue Hen Country Network, Inc.,* supra, this Court concluded that a subpoena *duces tecum* issued by the Attorney General pursuant to 29 *Del.C.* § 2504(d)[9] violates the Fourth Amendment proscription against unreasonable searches and seizures and may be quashed or modified only where the sub-

poena is determined to be unreasonable. 314 A.2d at 201; see also *In Re Clark,* Del.Ch., 256 A.2d 278 (1969), rev'd on other grounds, Del.Supr., 269 A.2d 59 (1970). The Court in *Blue Hen Country Network* determined that in order to be reasonable a subpoena *duces tecum* must: 1) specify the materials to be produced with reasonable particularity; 2) require the production of only relevant materials; and 3) cover only a reasonable period of time. *Id.*

In *In Re Corrado Brothers, Inc.,* D.Del., 367 F.Supp. 1126 (1973), which involved a grand jury investigation into kickbacks and corruption in the State Highway Department, the Court adopted the same three-part test of reasonableness upon defendants' motion to quash. 367 F.Supp. at 1129. The *Corrado Brothers* Court concluded that in order to determine whether a particular subpoena is reasonable, a reviewing court must look to the stated purpose of the subject investigation. 367 F.Supp. at 1130; see also *In Re Blue Hen Country Network, Inc.,* supra, at 202.

■ Since the purpose of the investigation which forms the basis for the demand at issue here is similar to the purposes of the investigations which formed the basis for the subpoenas at issue in *In Re Blue Hen Country Network, Inc.* and *In Re Corrado Brothers, Inc.,* and since 6 *Del.C.* § 2516 suggests that a court evaluating the propriety of an investigative demand should be guided by the principles governing the propriety of grand jury investigations, this Court concludes that § 2514 investigative demands also must meet the three-part reasonableness standard. Accord *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (when administrative agency subpoenas corporate books or records Fourth Amendment requires subpoena be sufficiently limited in scope, relevant in purpose and specific in

---

9. Title 29, § 2504(4), the purpose of which is "to confer upon the Attorney General, in the investigation of crime and other matters of public concern, powers similar to those inherent in grand juries," see *In Re Hawkins,* Del.Supr., 123 A.2d 113 (1956), authorizes the Attorney General "[t]o investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith...."

direction so that compliance will not be unreasonable and burdensome).

■ Applying that standard to the demand at issue, the Court finds that the demand is reasonable. With respect to the requirement of particularity, petitioners raise only one objection. They argue that item 12), which requires petitioners to produce "any and all other documents used in connection with the sale or advertisement for sale of products in Delaware", is overly broad. This Court cannot agree.

Petitioners do not suggest that they are unable to identify the documents requested in item 12) or that production of such documents would be unduly burdensome, the inquiries relevant to the particularity requirement of the reasonableness test. See *People Ex Rel. MacFarlane v. American Banco,* supra, at 830, citing *United States v. Reno,* supra; 6 *Del.C.* § 2515(2). Rather, petitioners argue that the breadth of request 12) constitutes "fishing" on the part of the Attorney General. Such an argument, however, goes to the relevance of the request, not the particularity thereof.

■ In order to determine whether an item is relevant, a reviewing court must compare the challenged request with the stated purpose of the inquiry. See *F.T.C. v. Rockefeller,* S.D.N.Y., 441 F.Supp. 234 (1977), aff'd, 2d Cir., 591 F.2d 182 (1979); *People Ex Rel. MacFarlane v. American Banco,* supra, at 830. As previously indicated,[10] the purpose of the demand at issue is to determine whether petitioners have engaged in misrepresentations in violation of 6 *Del.C.* § 2513 in connection with the sale and advertisement of soap products and home appliances in Delaware. Documents used in connection with the sale or advertisement for sale of products in Delaware (item 12)) certainly are relevant in determining whether violations of § 2513 have been committed. Indeed, if only written misrepresentations have been made, it is doubtful that such misrepresentations could be ascertained without such documents.

■ For similar reasons, the Court concludes that copies of petitioners' customer contracts and cancellations thereof (items 1) and 2)) also are relevant to the stated purpose of the demand. To determine what, if any, misrepresentations have been made, the Attorney General will have to compare what petitioners have promised their customers with what they have provided. Such a comparison necessarily involves an examination of the documents used in connection with the sale or advertisement of products and the contracts executed as well as any cancellations thereof and interviews of petitioners' customers identified through the executed agreements. Thus, items 1) and 2) of the demand, like item 12), are relevant to its stated purpose.

The Court finds petitioners' relevancy arguments to the contrary unpersuasive. Petitioners contend that the Attorney General already possesses the names and addresses of several of petitioners' customers, and therefore, the disclosure of further names would serve no useful purpose. The weakness of such a contention is apparent. The Attorney General cannot possibly determine the extent of any unlawful trade practices without contacting at least a reasonable sample of petitioners' customers.

■ Petitioners also contend that the Attorney General should be prohibited from contacting petitioners' customers, thereby jeopardizing petitioners' goodwill and disrupting petitioners' business. While there may be merit in petitioners' contention, the public interest in protecting consumers and legitimate business enterprises from unfair or deceptive merchandising practices outweighs petitioners' interest in not having their customers contacted by state officials. Moreover, mere business disruption, absent a showing of harassment and oppression, is insufficient to warrant quashing a subpoena, *In Re Corrado*

---

**10.** See page 1, supra.

*Brothers, Inc.,* supra, at 1132, or in the instant case, the limitation of an investigative demand. If petitioners doubted the Attorney General's "reason to believe" that unlawful trade practices have been committed, they should have challenged the demand on that basis.

■ In view of the stated purpose of the demand, the Court also concludes that items 4), 5) and 6) of the demand are relevant. The demand states that petitioners may have engaged in misrepresentations by telling consumers that they have won a "prize" when in fact the "prize" is available only in connection with the purchase of a huge quantity of soap products at a price in excess of the value of the soap and the offered "prize"—a video recorder or a microwave oven, for example. In order to determine whether such misrepresentations have been made, the Attorney General must have access to petitioners' retail, wholesale and quoted prices. Without such information, the Attorney General would be unable to determine whether the cost of the purchased products exceeded the value of the offered "prize."

Having determined that the requested items are relevant to the stated purpose of the demand and there being no objection to the time period of the demand, the Court concludes that the documents sought are reasonable, and therefore, may be required pursuant to 6 *Del.C.* § 2514.

■ In addition to their objections to the items sought by the demand, petitioners contend that 6 *Del.C.* § 2514 does not authorize written interrogatories. While it is true that § 2514(2) specifically authorizes only oral interrogatories, it is clear that § 2514 also authorizes written interrogatories.

Subsection (1) of § 2514 authorizes the Attorney General to require a person upon whom an investigative demand is served to "[f]ile a statement or report in writing under oath on such forms as the Attorney General may prescribe as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person." The interrogatories directed to peti-

tioners require petitioners to do no more than "[f]ile ... statement[s] ... in writing under oath ... concerning the sale or advertisement of merchandise" by petitioners, and therefore, are authorized by § 2514(1).

In accordance with well established principles of statutory construction, a reviewing court must attempt to give meaning to all parts of a statute. *DiSabatino v. Ellis,* Del.Supr., 184 A.2d 469 (1962); *State v. Hollobaugh,* Del.Super., 297 A.2d 395 (1972). If the Court construed subsection (2) of § 2514 as a restriction on rather than an enlargement of subsection (1) of § 2514, as petitioners suggest, § 2514(1) would be rendered meaningless.

In summary, the Court concludes that neither the privilege against self-incrimination nor the privilege against the disclosure of trade secrets bars the production of any of the documents required by the investigative demand. Since the items sought are reasonably related to the stated purpose of the demand, they may be required. Written responses to the interrogatories attached to the demand also may be required pursuant to 6 *Del.C.* § 2514(1).

For the reasons stated, petitioners' motion for a protective order is denied.

IT IS SO ORDERED.