## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KDM DEVELOPMENT CORP., a New York corporation, | : | |
| | : | |
| Petitioner, | : | |
| | : | C.A. No. S23M-06-018-CAK |
| v. | : | |
| | : | |
| THE CONSUMER PROTECTION UNIT OF THE DEPARTMENT OF JUSTICE OF THE STATE OF DELAWARE, | : | |
| | : | |
| | : | : |
| Respondent. | : | |

Submitted: September 26, 2023
Decided: October 24, 2023

*Upon Petition to Quash Subpoenas and Issuance of Protective Order*

### DENIED

John W. Paradee, Esquire and Brian V. DeMott, Esquire, 6 South State Street, Dover, DE 19901, Attorneys for Petitioner.

Owen P. Lefkon, Esquire and Ryan T. Costa, Esquire, Deputy Attorneys General, State of Delaware Department of Justice, 820 N. French Street, Wilmington, DE 19801, Attorneys for Respondent.

### MEMORANDUM OPINION AND ORDER

**KARSNITZ, R.J.**

# I. INTRODUCTION

At its core, this case asks the question: what tools are available to the Consumer Protection Unit ("CPU") of the Delaware Department of Justice ("DOJ") to investigate suspected violations of two enabling statutes, the Consumer Fraud Act[1] and the Manufactured Homes Act.[2] More peripherally, the case asks whether the tools which the CPU in fact used – general subpoenas under the Department of Justice Act[3] -- are directed to the wrong party, or otherwise violate the requirements of the Delaware Superior Court Rule on Subpoenas.[4] For the reasons discussed, below, I find that the CPU used the appropriate subpoenas and directed the subpoenas to a proper party. Concerns about their overbreadth, specificity, reasonableness, relevance, and burdensomeness can be addressed at any time during the pendency of the investigation, including the need for a protective order to safeguard proprietary, confidential, or otherwise privileged information and documents.

## II. FACTS AND PROCEDURAL HISTORY

### A. Briarwood and Donovan Smith Communities

KDM's website lists Briarwood Manufactured Home Community ("Briarwood")

---

[1] 6 *Del. C.* § 2511, *et seq.*
[2] 25 *Del. C.* § 7001, *et seq.*
[3] 29 *Del. C.* § 2508(a).
[4] Super. Ct. Civ. R. 45.

and Donovan Smith Manufactured Home Community ("Donovan Smith") as two of its six Delaware properties. Briarwood is a manufactured home community in Laurel, Delaware. Donovan Smith is a manufactured home community in Lewes, Delaware. Briarwood is owned by Mobile Gardens MHP, LLC and the Donovan Smith is owned by Donovan-Smith MHP, LLC. KDM manages certain accounting and other administrative functions for the owners.

On or around March 31, 2023, the CPU learned that Briarwood's residents had lost water access due to problems with Briarwood's well and pump. Briarwood's owners later started to pump water from a different well. On April 5, 2023, the CPU learned that the Briarwood residents temporarily lost the ability to access water from that well also.

The CPU is also aware of recurring issues previously experienced at Donovan Smith involving untreated wastewater surfacing from the park's septic system. The CPU is investigating whether these issues arose from years of inadequate maintenance and whether the property owners have potentially violated Delaware law.

### B. The Three Subpoenas

On April 6, 2023, the CPU issued three nearly identical subpoenas (the "Subpoenas").[5] The Subpoenas were delivered on April 14, 2023 and were directed to KDM,

---

[5] Pursuant to 29 *Del.* C. §§ 2504(4) and 2508(a).

KDM Development Corporation, LLC, and KDM Development LLC. They include eight discrete requests for documents relating to the maintenance and function of the water, septic, and other utility systems in KDM's Delaware communities and the ownership structure of the KDM Delaware communities. The Subpoenas seek, *inter alia*, documents and information related to KDM, Briarwood, and Donovan Smith, including internal administrative documents, communications to residents, and documents provided to other Delaware governmental entities.

### C.    The Petition

On April 19, 2023, KDM filed a petition in the Court of Chancery to quash the Subpoenas. On June 22, 2023, that petition was dismissed for lack of statutory jurisdiction. On June 23, 2023, KDM filed this Petition to Quash Subpoenas and Issuance of Protective Order ("the "Petition"). On July 19, 2023, the CPU filed its Opposition. On August 14, 2023, KDM filed its Response. On August 28, 2023, the CPU filed its Reply in Further Opposition. On September 26, 2023, I held oral argument on the issues presented by the Petition and took the Petition under advisement. This is my ruling on the Petition.

In the Petition, KDM first claims that, because it is neither the owner, operator, nor manager of any manufactured housing community in the State of

Delaware, the Attorney General issued the Subpoenas to the wrong party. KDM next argues that the Subpoenas were improperly issued under the applicable Delaware statutes. Finally, KDM argues that the Subpoenas are (a) overly broad, (b) lacking in requisite specificity, (c) unreasonable in scope, reach, and time, (d) unconstrained by relevance, (e) unduly burdensome, and (f) otherwise contrary to established Delaware law.

## III.   STANDARDS OF REVIEW

### A. Statutory Construction

The question of whether the CPU had the authority to issue the Subpoenas under the DOJ's enabling legislation, rather than an investigative demand under the Consumer Fraud Act, or under the Manufactured Housing Act, as discussed below, is one of statutory construction. When faced with a question of statutory construction, I "must seek to ascertain and give effect to the intention of the legislature as expressed in the statute itself," and should "give the statutory words their commonly understood meanings."[6] "The 'most important consideration for a court in interpreting a statute is [the language] the General Assembly used in writing [the statute].'"[7] When analyzing

---

[6] *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 230 (Del. 1982).

[7] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 113 (Del. 2020) (quoting *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950 (Del. Ch. 2013)); *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 542 (Del. 2011) ("[T]his Court's role is to interpret the statutory language that the General Assembly actually adopt[ed], even if

a statute, it is presumed that "the General Assembly purposefully chose particular language, and the court will therefore construe statutes to avoid surplusage if reasonably possible."[8]

When a statute is found to be clear and unambiguous, the plain meaning of the statutory language controls.[9] "The fact that the parties disagree about the meaning of the statute does not create ambiguity."[10] Rather, a statute is ambiguous "only if it is reasonably susceptible to different interpretations, or 'if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature.'"[11]

## B. Weight Given to Agency Interpretation of Statute

In reviewing the propriety of the Subpoenas, I am mindful of the Delaware Administrative Procedure Act's deference to the DOJ's interpretation of its own enabling statute, which authorizes the issuance of Subpoenas:

> The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted.[12]

---

unclear and explain what [the Court] ascertain[s] to be the legislative intent without rewriting the statute to fit a particular policy position.").

[8] *Id*. at 117 (citing *Sussex Cty. Dep't of Elections v. Sussex Cty. Republican Comm.*, 58 A.3d 418, 422 (Del. 2013).

[9] *Chase Alexa, LLC v. Kent Cty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010) (citing *Dir. of Rev. v. CAN Hldgs., Inc*., 818 A.2d 953, 957 (Del. 2003).

[10] *Id*. (quoting *Centaur Partners, IV v. National Intergroup, Inc.*, 582 A.2d 923, 927 (Del.1990).

[11] *Id*. (quoting *Dir. of Rev. v. CAN Hldgs.,* Inc., 818 A.2d 953, 957 (Del. 2003)).

[12] 29 *Del. C.* §10142(a).

6

As this Court recently stated:

> The Court engages in a *de novo* review of a board or agency's statutory interpretation but "may give appropriate deference to an agency's application of its own rules or regulations."[13]

Thus, although I will not completely defer to DOJ's interpretation of its enabling statute, but rather consider it *de novo*, I will accord due weight to DOJ's interpretation of the statute.

## C. Quashal

Assuming that the Subpoenas were validly issued and directed to the appropriate party, KDM asks me to quash them for the reasons set forth in Superior Court Civil Rule 45. The three grounds for me to quash the Subpoenas under that Rule are if they:

(i)     fail to allow reasonable time for compliance,
(ii)    require disclosure of privileged or other protected matter and no exception or waiver applies, or
(iii)   subject a person to undue burden.[14]

---

[13] *Ripple v. Delaware Board of Nursing*, 2022 WL 2967227 (Del. Super. July 27, 2022); *see Matter of Scottish Re (U.S.), Inc.*, 273 A.3d 277, 296 (Del. Ch. 2022) (noting further that "[w]hat a court applying Delaware law cannot do is defer to the agency's interpretation 'merely because it is rational or not clearly erroneous' ") (quoting *Public Water Supply Co. v. DiPasquale,* 735 A.2d at 383 (Del. 1999) (a court "may accord due weight, but not defer, to an agency interpretation of a statute administered by it")); *see also State Farm Auto. Ins. Co. v. Mundorf,* 659 A.2d 215, 220 (Del. 1995) ("Although the interpretation of a regulation is ultimately a question of law for a court to decide, substantial weight and deference is accorded to the construction of a regulation enacted by an agency which is also charged with its enforcement.").

[14] Super. Ct. Civ. R. 45(c)(3)(A).

KDM has not established that it was not given a reasonable time to comply with the Subpoenas, that the Subpoenas require the disclosure of privileged or other protected matter, or that it has been subjected to an undue burden, other than to acknowledge the fact that delivery of the Subpoena items would require time and effort and that the requests were duplicative of those of other Delaware government agencies. At oral argument, I advised KDM that, if it had traditional Rule 45 issues, it could present them to me at any time. That offer remains open.

Nor am I troubled by the fact that the Subpoenas were not issued to the owners of record title of Briarwood and Donovan Smith, Mobile Gardens MHP, LLC and Donovan-Smith MHP, LLC, respectively. The corporate structure of the KDM entities which own and manage Briarwood and Donovan Smith is somewhat convoluted, and one of the purposes of an investigation and subpoenas is to ascertain that structure. Of course, any ultimate CPU action against KDM must be addressed to the proper KDM legal entities.

Rather, the crux of KDM's argument is that the Subpoenas should be quashed because the CPU does not have authority on these facts to issue general DOJ Subpoenas, but rather was required to utilize the remedies specified under the Consumer Fraud Act,

such as investigative demands, or the Manufactured Housing Act. That is the focus of my decision today.

## IV.   STATUTORY LANDSCAPE

### A.   Department of Justice Act

In its enabling statute, the DOJ has been afforded multiple tools for conducting investigations. 29 *Del.* C. § 2504(4) empowers the DOJ "[t]o investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith …" 29 *Del. C.* § 2508(a) provides that "the Attorney General or any assistant" has the power and authority to administer oaths and affirmations to any person, including witnesses, at any time or in any place and may issue process to compel the attendance of persons, witnesses and evidence at the office of the Attorney General or at such other place as designated. Our Supreme Court has held that [t]he purpose of this statutory grant of power [is] to "confer upon the Attorney General, in the investigation of ...   matters of public concern, powers similar to those inherent in grand juries, including the grand jury's power to compel ...   the production of documents."[15]

Unlike civil investigative demands, discussed below, Attorney General

---

[15] *Johnson v. State,* 983 A.2d 904, 920 (Del. 2009) (quoting *In re McGowen,* 303 A.2d 645, 647 (Del.1973)).

Subpoenas are not issued pursuant to judicial order. Moreover, the standard that governs Attorney General subpoenas differs from the standard applicable to civil investigative demands. The Delaware Supreme Court has outlined the following standard for Attorney General subpoenas: "(1) the subpoena must specify the materials to be produced with reasonable particularity, (2) the subpoena must require the production only of materials relevant to the investigation, and (3) the materials must not cover an unreasonable amount of time."[16]

### B. Consumer Fraud Act

The stated purpose of the Consumer Fraud Act[17] is to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State."[18] Each of the three subpoenas explicitly states that the Subpoena relates to an investigation by the CPU of the DOJ regarding possible violations of 6 *Del. C. §* 2513.

The potential violation arises from the recent failure of a water well which had been providing the potable water supply to Briarwood. The CPU has not yet indicated what specific conduct on the part of KDM gives rise to the CPU's belief

---

[16] *Johnson,* 983 A.2d at 921 (citing *In re Blue Hen Country Network,* 314 A.2d 197,201 (Del. Super. 1973)).
[17] 6 *Del. C. §* 2511, *et seq.*
[18] 6 *Del. C. §* 2512.

that a violation of 6 Del. C. § 2513 has occurred, but its focus is on the failure of the water well and the efforts required to resume provision of a potable water supply to Briarwood. The potable water supply has now been restored thanks to a new water well.

The CPU has also focused on the water, pump, and septic systems in Donovan Smith. Donovan Smith is subject to a Memorandum of Understanding dated April 28, 2022 (the "MOU") which was negotiated by and among the DOJ, the Delaware Department of Natural Resources, the Department of Health and Social Services, and the Lewes Board of Public Works, which provides for the construction of new public water and sewer utilities for Donovan Smith.

Two enforcement mechanisms were available to CPU if it had chosen to use the remedies provided under the Consumer Fraud Act: issuing a civil investigative demand to KDM pursuant to an order of this Court,[19] or bringing a civil proceeding against KDM for injunctive relief and a civil penalty of $10,000 per violation.[20] If the CPU had chosen to use an investigative demand, that demand must meet certain specific statutory prerequisites, and must also comply with the reasonableness standard

---

[19] 6 *Del. C.* § 2514.
[20] 6 *Del. C.* § 2522.

11

applicable to subpoenas in general, pursuant to the Fourth Amendment's proscription against unreasonable searches and seizures.[21]

More specifically, an Attorney General's investigative demand must be issued pursuant to an Order of a Judge of this Court or a Vice Chancellor of the Court of Chancery, and must also (a) state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable thereto; (b) describe the class or classes of material to be produced thereunder with such definiteness and certainty as to permit such material to be fairly identified; (c) prescribe a return date which will provide a reasonable time within which the material so demanded may be assembled and made available for inspection and copying or reproduction; and (d) identify the custodian to whom such material shall be made available or the office before whom such oral examination shall take place or with whom such written reports shall be filed.[22]

Similarly, to avoid violating the Fourth Amendment, an investigative demand, like an Attorney General subpoena, must (a) specify the materials to be produced

---

[21] *In the Matter of Attorney General's Investigative Demand to Michael Malemed,* 493 A.2d 972, 976 (Del. Super. 1985).

[22] 6 *Del.* C. §§ 2514, 2515.

with reasonable particularity, (b) require the production of only relevant materials, and (c) cover only a reasonable period of time.[23]

### C. Manufactured Housing Act

The stated purpose of the Manufactured Housing Act[24] is to "encourage manufactured home community owners and manufactured homeowners and residents to maintain and improve the quality of life in manufactured home communities.[25] The Manufactured Housing Act specifies the required provisions of a manufactured home rental agreement; specifically, the Act requires a provision in the lease for the maintenance of water, plumbing, sewer, septic and other utilities provided by the landlord in good working order, repairing those utilities and services within the earlier of 48 hours after written notification of a utility or service problem, or as soon thereafter as is practicable if a repair within 48 hours is not practicable.[26]

As currently written, the only remedy for the CPU or DOJ specified under the Manufactured Housing Act is to bring a civil action in a court of competent jurisdiction for a "pattern or practice of violating or failing to comply with the terms of any provision

---

[23] *Malemed,* 493 A.2d at 976.
[24] 25 *Del. C.* § 7001, *et seq.*
[25] 25 *Del. C.* § 7001(a)(2).
[26] 25 *Del. C.* § 7008(13)(f).

of a rental agreement" required by the Act.[27] There is no functional equivalent of a subpoena or the investigative demand process under the Consumer Fraud Act.

Senate Bill No. 172, which has passed in the Senate but not the House of Representatives, would add a new subsection (c) to 25 *Del. C.* § 7005, and would deem a pattern or practice of violations by a landlord an unlawful practice under the Consumer Fraud Act (see discussion above), which would make the remedy of an investigative demand available to the CPU and DOJ if certain requirements are met. However, these remedies are not available to the CPU and DOJ under the Manufactured Housing Act as currently written.

## V.    ANALYSIS

### A. Department of Justice Act

In my view, both the Briarwood and the Donovan Smith investigations are well within the statutory authority of DOJ "[t]o investigate matters involving the public peace, *safety* and justice and to subpoena witnesses and evidence in connection therewith" [emphasis supplied], and thus enable the CPU to "issue process to compel the attendance of persons, witnesses and evidence." Furthermore, the three Subpoenas specify the materials to be produced with reasonable particularity, require the

---

[27] 25 *Del. C.* § 7005(b).

production only of materials relevant to the investigation, and do not cover an unreasonable amount of time. Thus, the Subpoenas are authorized under the Department of Justice Act, unless countermanded by the Consumer Fraud Act or the Manufactured Housing Act.

## B. Consumer Fraud Act

Similarly, in my view, both the Briarwood and the Donovan Smith investigations are well within the statutory authority of DOJ to protect consumers from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within Delaware.

However, KDM argues that DOJ must use one of the remedies specified under the Consumer Fraud Act, and cannot use general DOJ subpoenas, especially since those remedies contain procedural requirements and safeguards that are not provided by general DOJ subpoenas. KDM further argues that the legislature would not have provided specific remedies under the statute unless it intended them to be exclusively used.

The CPU argues that the operative language of these two statutory remedies is precatory -- that the DOJ "*may*" use them – and there is no mandatory language such as "shall" or any other statutory language requiring the use of these remedies. Using the

statutory construction standards of review discussed above, the CPU argues that the clear and unambiguous language of the statute allows DOJ to use general subpoenas.

I am persuaded by the DOJ's argument. The legislature could have used mandatory language in the Consumer Fraud Act, or expressly stated that the use of the civil investigative demand under the Act is required to the exclusion of other statutory remedies. It did not do so. Applying the standards of statutory construction and of deference to the DOJ discussed above, I find that the CPU was free to choose between the use of general DOJ subpoenas and a civil investigative demand, and its choice of the former is not improper.

### C. Manufactured Housing Act

I further find that both the Briarwood and the Donovan Smith investigations are well within the statutory authority of DOJ to encourage manufactured home community owners and manufactured homeowners and residents to maintain and improve the quality of life in manufactured home communities under the Manufactured Housing Act. Indeed, the leases for the properties in question provide, as the Act requires, for the maintenance of water, plumbing, sewer, septic and other utilities provided by the landlord in good working order, repairing those utilities and services within the earlier

of 48 hours after written notification of a utility or service problem, or as soon thereafter as is practicable if a repair within 48 hours is not practicable.

As discussed above, the only remedy for the CPU specified under the Manufactured Housing Act as currently written is a civil action in a court of competent jurisdiction for a "pattern or practice of violating or failing to comply with the terms of any provision of a rental agreement" required by the Act. KDM argues the use of general DOJ subpoenas under the Manufactured Housing Act is improper. Therefore, this would leave the CPU with no investigative remedy for a violation of the Act other than a full-blown civil action in this Court, since the Manufactured Housing Act, unlike the Consumer Fraud Act, does not presently contain a specified remedy equivalent to an investigative demand.

I disagree with this interpretation and its result. The ellipsis of remedy in the Manufactured Housing Act, as underscored by the legislative attempt to remedy it, indicates that the only viable and practical option open to the CPU was the issuance of the three Subpoenas.

## VI.    CONCLUSION

For the foregoing reasons, KDM's Petition to Quash Subpoenas and the Issuance of a Protective Order is **DENIED**.  If KDM has residual issues or concerns with the

Subpoenas under Rule 45, it is free to bring them to my attention at any time, including the need for appropriate protective orders.

**IT IS SO ORDERED**.


<u>/s/ Craig A. Karsnitz</u>


cc:    Prothonotary