## No. 27454

**The People of the State of Colorado ex rel. J. D. MacFarlane, Attorney General of the State of Colorado v. American Banco Corporation, a Colorado corporation**

(570 P.2d 825)

Decided September 12, 1977.                    Rehearing denied October 24, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Alan H. Friedman, First Assistant, for petitioner-appellee.

Alperstein, Plaut and Busch, Arnold Alperstein, Evans S. Lipstein, Judith S. Bassow, for respondent-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Questions concerning the constitutionality of certain sections of the Colorado Consumer Protection Act are before us for review on this appeal. Sections 6-1-101, *et seq.*, C.R.S. 1973. Appellant American Banco Corporation challenges those provisions of the Act and the procedure which grants the attorney general of the State of Colorado the power to issue subpoenas and force a witness to appear and produce enumerated documents. Sections 6-1-108, 109, C.R.S. 1973.

This action arises out of an investigation conducted by the attorney general's office into the operations and practices of a privately owned health club, operated by Duane Knaus, as principal, known as the World of Fitness. From the spring of 1975 until its closing in February, 1976, the World of Fitness and Duane Knaus were engaged in promoting and selling, and did sell, spa memberships to approximately 400 consumers. A large number of these transactions involved installment sales contracts. At the time the spa's business terminated, most, if not all of the contractural obligations of the World of Fitness were unfulfilled. Appellant came into possession of various records reflecting the transactions between World of Fitness and its members as a result of purchasing approximately 100 of the installment sales contracts.

American Banco and the attorney general's office made independent and simultaneous efforts to obtain alternative spa facilities for World of Fitness members. These efforts resulted in agreements whereby two Denver area health spas offered to provide their facilities and services to World of Fitness members.

While endeavoring to secure alternative facilities, the attorney general's office also conducted an investigation into suspected deceptive trade practices on the part of World of Fitness and Duane Knaus. Attempts were made to contact spa members to determine what representations were made to them at the time they joined the World of Fitness and at the time it closed its doors. As part of this investigation, the attorney general's office subpoenaed certain information contained in records in American Banco's possession pertaining to the World of Fitness. American Banco objected to and refused to comply with the subpoena. Thereafter, the attorney general's office commenced a proceeding in district court to obtain enforcement of the subpoena. After a hearing, the district court issued an order to produce certain documents. American Banco appeals. We affirm.

I.

The two statutory provisions challenged in this appeal provide:

Section 6-1-108, C.R.S. 1973.

"*Subpoenas — hearings — rules.* The attorney general, in addition to other powers conferred upon him by this article, may issue subpoenas to require the attendance of witnesses· or the production of documents, administer oaths, conduct hearings in aid of any investigation or inquiry . . . as may be necessary to administer the provisions of this article."

Section 6-1-109, C.R.S. 1973.

"*Remedies.* (1) If any person . . . fails to obey any subpoena pursuant to section 6-1-108, the attorney general may apply to any district court for an appropriate order to effect the purposes of this article. The application shall state that there are reasonable grounds to believe that the order applied for is necessary to terminate or prevent deceptive trade practices as defined in this article. If the court is satisfied that reasonable grounds

exist, the court in its order may:

"(a) Grant injunctive relief restraining the sale or advertisement of any property by such person;

"(b) Require the attendance of or the production of documents by such person, or both;

"(c) Grant such other or further relief as may be necessary to obtain compliance by such person."

Appellant contends that these sections violate its right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article II, Section 7 of the Colorado Constitution. American Banco insists probable cause must be established before a neutral and detached magistrate before a subpoena may issue. The appellant asserts that since the statute authorizes the attorney general to issue a subpoena upon his own volition, without prior court approval, the procedural protections afforded against unreasonable searches and seizures are lacking. Appellant also contends that the statutes are unconstitutional in that they permit the issuance of subpoenas that are unconstitutionally indefinite and overbroad, and also compel the production of materials not relevant to the purposes sought to be accomplished by the enactment of the Consumer Protection Act. We find both contentions unpersuasive and contrary to established authority.

It is important to note preliminarily that the person subpoenaed in this case was a corporation. Self-incrimination under the Fifth Amendment of the United States Constitution is not an issue as to a corporate entity. *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). However, a corporation has the right to invoke the protections of the Fourth Amendment. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Pub. Co. v. Walling, supra*; *A. v. District Court of Second Judicial District*, 191 Colo. 10, 550 P.2d 315 (1976).

The United States Supreme Court, in *Oklahoma Press Pub. Co. v. Walling, supra*, stated the principles of law applicable to subpoenas duces tecum:

"[T]he fair distillation, insofar as they apply merely to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.

". . . The requirement of 'probable cause, supported by oath or affirmation,' literally applicable in the case of a warrant, is satisfied in that of an order for production by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in 'describing the place to be searched, and the persons or things to be seized,' also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry."

These principles have been consistently applied. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *United States v. Morton Salt Co., supra*; *A. v. District Court of Second Judicial District, supra*.

Appellant's contention that the statute is unconstitutionally defective in authorizing the attorney general to issue the subpoena in the first instance was also answered in *Oklahoma Press Pub. Co. v. Walling, supra*. In that case, the United States Supreme Court sustained the position of the Administrator of the Wage and Hour Division of the Department of Labor that his investigative function was essentially the same as a grand jury's or a court's in issuing pretrial orders for the discovery of evidence. The same limitations were held to be applicable; he must not act arbitrarily or in excess of his statutory authority. But his inquiry need not be limited by forecasts of the probable result of the investigation. The Supreme Court stated:

"We think, therefore, that the courts of appeal were correct in the view that Congress has authorized the administrator, rather than the district courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers, and, in the case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the district court in enforcing it. No constitutional provision forbids Congress to do this. . . ." *Oklahoma Press Pub. Co. v. Walling, supra*.

The attorney general, under the Colorado Consumer Protection Act, occupies a position not unlike that of an administrator of a governmental agency. Indeed, the duties and powers of the two are quite similar. At least one court has held that an attorney general, when exercising his investigatory powers, acts as an executive official performing an administrative duty. *Carlisle v. Bennett*, 268 N.Y. 212, 197 N.E. 220 (1935). The statutory authority vested in both positions reflects a compromise that

attempts to balance the public's interest in effective investigation at the preliminary stage against the individual's interest in being free from governmental intermeddling. The compromise reached reflects the realization that both public officers would be unable to effectively discharge their duties of investigation and enforcement without the subpoena power.

▮ In our view, the protections afforded persons served with an attorney general's subpoena are as full and as meaningful as those afforded persons served with a grand jury subpoena. Under both, the person from whom information is sought may refuse to submit to the demands of the subpoena if it is unreasonable. In the case of grand jury subpoenas issued pursuant to Crim. P. 17, the person served with the subpoena must seek judicial review and establish that the subpoena should be modified or quashed because it is unreasonable, oppressive, or invalid on some other grounds. The attorney general's subpoena, under the Colorado Consumer Protection Act, affords greater protection because the burden of seeking court review is upon the attorney general. He must carry the burden of satisfying the court that reasonable grounds exist to believe the subpoena is necessary to terminate or prevent a deceptive trade practice. The court, therefore, is the protective barrier between the naked demand of the subpoena to produce and an enforceable court order. *A. v. District Court of Second Judicial District, supra.*

Petitioner's reliance upon *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), is misplaced, since that case did not involve a statute that contains the protections included in the Colorado Consumer Protection Act.

▮ The statute here, far from permitting the issuance of overbroad and indefinite subpoenas, or subpoenas which demand production of material not relevant to a statutory purpose, requires that the subpoena be necessary to administer the provisions of the Consumer Protection Act. While the attorney general is authorized to issue subpoenas, the Act makes his right to do so subject to judicial review. Whether a given subpoena is unreasonable can be determined only on an *ad hoc* basis.

The approach we have taken finds support in New York court decisions which have reviewed the issuance of subpoenas by that state's attorney general pursuant to his investigatory functions. *In Re the Matter of La Belle Creole International v. Attorney General,* 10 N.Y.2d 192, 176 N.E.2d 705, 219 N.Y.S.2d 1 (1961); *Carlisle v. Bennett, supra.*

## II.

Appellant also contends that the subpoena and the court order issued in this case fail to satisfy the requirements of (1) definiteness and (2) relevancy. The attorney general's subpoena duces tecum ordered the production of:

"The names and addresses of all individuals who entered into membership contracts with WORLD OF FITNESS, A Health Spa, at any time prior

to March, 1976, which contracts were purchased by, or assigned to, American Banco Corporation."

The district court, in its order required:

"The respondent American Banco Corporation shall produce all records, documents and contracts in its possession concerning all persons who have entered into contracts with the World of Fitness for the rendition of services by World of Fitness to such purchasers, as well as any other documentations, promissory notes, or contracts by which the purchasers are obligated to the World of Fitness or directly to American Banco Corporation in exchange for the services contemplated to be rendered by World of Fitness to such purchasers."

The requirement that the subpoena be definite and not overbroad is satisfied by a showing that the subpoena's language exhibit such particularity of description that the person subpoenaed be able to know what he is being asked to produce and that there be such particularity of breadth that good faith compliance would not be unduly burdensome. *United States v. Reno*, 522 F.2d 572 (10th Cir. 1975). We find this standard is satisfied by both the original subpoena and the subsequent court order.

The requirement of relevancy is met by a showing that a relationship exists between the documents which must be produced and the purposes of the inquiry. *United States v. Reno, supra; In Re Grand Jury Subpoena Duces Tecum, Etc.*, 203 F.Supp. 575 (S.D.N.Y. 1961). The attorney general has made such a showing in this case.

Section 6-1-105(1)(e), C.R.S. 1973, of the Consumer Protection Act prohibits as a deceptive trade practice a person's ". . . knowingly [making] a false representation as to the characteristics, ingredients, uses, benefits . . . or quantities of goods and services . . . [sold]." Also applicable in this case are those subsections that make it a deceptive trade practice to utilize "bait and switch advertising" or to "fail to make deliveries of the product within a reasonable time or to make a refund." Sections 6-1-105(1)(n), (VI), (VII), C.R.S. 1973. Complaints filed with the attorney general's office provided cause for belief that these sections may, in fact, have been violated by Duane Knaus and the World of Fitness. Under the statute, the attorney general is authorized to seek an injunction where he has cause to believe that a person has engaged in, or is engaging in, any listed deceptive trade practices. Section 6-1-110(1), C.R.S. 1973.

In order to establish the intent elements required by the above-cited sections, the state of mind of Duane Knaus at the time he sold the memberships, as well as at the time he ceased doing business, are relevant. Oral, as well as written representations made to customers are important sources of such evidence. The documents ordered to be produced would have made known to the attorney general the identity and addresses of a number of World of Fitness members not yet known to the attorney

general, as well as providing actual contracts utilized by the World of Fitness and Duane Knaus. Here, a clear and reasonable relationship existed between the documents sought and the purpose of the attorney general's investigation.

## III.

■ American Banco Corporation further contends that the trial court exceeded its statutory authority in entering an order broader than the original subpoena. It asserts that under section 6-1-109(c), C.R.S. 1973, the district court is only authorized to grant such other and further relief as may be necessary to obtain compliance with the original subpoena.

■ The district court construed section 6-1-109(c), C.R.S. 1973, as authorizing the issuance of any appropriate order under the circumstances, rather than as permitting only an order to comply with the original subpoena. We find the district court's interpretation of the statute to be correct. If subsection (c) were to be construed as narrowly as suggested by American Banco, subsection (b), which authorizes the district court to require the production of documents, would be rendered meaningless. Since all provisions of statutes are to be construed as having been intended to be effective, American Banco's construction cannot prevail. Section 2-4-204, C.R.S. 1973.

## IV.

Appellant's final allegation of error challenges the district court's admission of certain evidence and the sufficiency of the evidence to support certain findings. First, it asserts that the trial court erred in admitting hearsay evidence to establish "reasonable grounds" to believe that the order was necessary to prevent or terminate a deceptive trade practice.

■ We hold that hearsay was properly admitted on the issue of "reasonable grounds." This question requires a consideration of the type of procedure contemplated by the legislature. A similar question was presented in *People ex rel. Orcutt v. District Court*, 164 Colo. 385, 435 P.2d 374 (1967). In that case, this court addressed the question of whether an action by the commissioner of agriculture for the State of Colorado to enforce an administrative subpoena duces tecum "upon proper showing" required strict compliance with the Colorado Rules of Civil Procedure. In holding that it did not, this court stated:

"Our study of C.R.S. 1963, 7-3-19(3) convinces us that the legislature did not intend to make a so-called 'federal case' out of the effort of Orcutt to get an order of court that Tepper comply with its subpoena. To the contrary, in our view, by the very language it used the legislature intended that the procedure should be rather summary in nature. . . . If the legislature intended that such proceeding was to be handled as just another civil proceeding, it could have said so. But it did not, and from the language of the statute itself, it is apparent to us that the legislature

intended to provide a simplified procedure for the judicial enforcement of administrative subpoenas."

We find that the language of the Consumer Protection Act indicates a similar intent that this enforcement procedure be rather summary in nature.

While we were not concerned with evidence in *Orcutt, supra*, we find comparable factors at work which permit the relaxation of the rules of evidence. The purpose of the statute empowering the attorney general to make investigations and issue subpoenas is to enable him to determine whether an action for injunctive relief should be brought. If only direct evidence were admissible in actions seeking court enforcement, the additional cost and delay that would occur might well defeat the purpose of the subpoena power.

The holding that hearsay evidence is admissible in proceedings to enforce subpoenas is not without precedent. This court has held that the issuance of a subpoena duces tecum by a court, supported by a police officer's affidavit describing the object sought, does not deprive a defendant of any constitutional rights. *Houston v. Manerbino*, 185 Colo. 1, 152 P.2d 166 (1974). *Accord, In Re Prestige Sewing Stores of Queens, Inc.,* 54 Misc.2d 188, 281 N.Y.S.2d 689 (Sup.Ct. 1967) (affidavits admissible to support the showing required of New York attorney general for issuance of subpoena duces tecum in an investigation).

A district court, familiar with the problems of hearsay evidence, is capable of weighing all evidence presented and concluding whether, in the court's discretion, "reasonable grounds" exist to believe the subpoena is justified.

Finally, American Banco asserts that the evidence presented was insufficient to support several of the court's numerous findings of fact. We disagree. The credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, the inferences and conclusions to be drawn therefrom were all within the province of the trial court, whose findings will not be disturbed on review unless there is no support in the record for them. *Adler v. Adler*, 167 Colo. 145, 445 P.2d 906 (1968); *Gonzales v. Chinn*, 121 Colo. 126, 214 P.2d 371 (1950). Considering the record before us in the light of the foregoing authorities, we are convinced that the findings of the trial court should not be disturbed.

Accordingly, we affirm the district court.

MR. JUSTICE LEE does not participate.