**BOARD OF MEDICAL EXAMINERS, STATE OF COLORADO, Petitioner–Appellee,**

v.

**S. Crawford DUHON, M.D., Respondent–Appellant.**

**No. 92CA1009.**

Colorado Court of Appeals, Div. III.

May 6, 1993.

Rehearing Denied July 15, 1993.

Certiorari Granted Feb. 7, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., William Higgins, First Asst. Atty. Gen., Denver, for petitioner-appellee.

Sheila H. Meer, P.C., Sheila H. Meer, Denver, for respondent-appellant.

Opinion by Judge CRISWELL.

The respondent, S. Crawford Duhon (doctor), seeks our review of an order entered by the district court enforcing an administrative subpoena duces tecum issued by the Colorado State Board of Medical Examiners (board), pursuant to § 12–36–104(1)(b), C.R.S. (1991 Repl.Vol. 5B), which required the doctor to produce "complete office records for all patients" in which a particular device was used by the doctor as a diagnostic tool between January 1, 1991, through November 13, 1991. We reverse the order and remand for a new hearing.

The board filed a petition pursuant to § 12–36–104(1)(b) to enforce a subpoena duces tecum admittedly served upon the doctor for the production of patient records that reflected instances in which the doctor had used a device called "INTERRO" as a diagnostic tool. This petition alleged that the doctor had used the INTERRO device and that the board had previously determined that this device purported to obtain measurements from various acupuncture pressure points of the human body. It also alleged that "such measurement is utterly meaningless for diagnosing physical conditions in the human body, certainly as it is purported to be interpreted by the INTERRO device." It finally asserted that "the use of this device fail[s] to meet generally accepted standards of medical practice."

The doctor filed a motion to quash the board's subpoena. In addition, he served a subpoena duces tecum upon the board's administrator to appear at the hearing upon the board's petition to enforce and the doctor's motion to quash. This required the administrator to produce "any and all records relevant to or concerning investigations of doctors who use or have used INTERRO in Colorado from January 1, 1986. . . ." The board moved to quash this subpoena.

At the hearing on these various motions, no evidence was presented by either party, although the doctor made an offer of proof and offered exhibits designed to demonstrate, among other things, that the board had no probable cause nor any reasonable suspicion to believe that he had violated any proper medical standard. At the completion of this offer of proof, the court quashed the subpoena served upon the board's administrator and entered an order enforcing the board's subpoena.

In taking these actions, the court relied solely upon the motion papers and statements of counsel and found that (1) the purpose for the board's subpoena, which was "to determine whether or not in the use of INTERRO as a diagnostic device, or method, [the doctor] has received or obtained confir-

mation of that diagnosis by other physicians," was a "lawfully authorized purpose"; (2) the information in the medical records which were the subject of the subpoena was relevant to the purpose of the subpoena; and (3) the number of records involved (estimated as those relating to 150 to 200 patients) did not render the requirements of the subpoena oppressive.

## I.

■ As a preliminary matter, we must first address the question of the extent of the record that this court may consider in passing upon the doctor's appeal.

This issue is presented because, after the trial court's entry of the order enforcing the board's subpoena, the doctor moved to stay the effect of the order pending this appeal. In the hearing on that motion, the court allowed the presentation of evidence, and the doctor, presumably in an attempt to demonstrate the likelihood of his success on this appeal, testified to many of the same facts that had been the subject of his offer of proof in the initial hearing.

The court denied the doctor's requested stay and, in doing so, commented that it considered many of the facts presented in the hearing to be irrelevant to the issue of the requested stay. In addition, the court specifically noted that, in entering its earlier order of enforcement, it had not considered the facts presented in the later hearing. This court later stayed the effect of the trial court's order pending our consideration of the doctor's appeal.

The board contends that, because the trial court did not consider any of the information presented in the second hearing before entering its enforcement order, none of that information can be considered by this court in determining the propriety of the court's earlier order. We agree. *See In re Petition of Edilson,* 637 P.2d 362 (Colo.1981) (evidence not presented to or considered by trial court will not be considered on review).

Hence, we must consider whether the trial court erred in entering its order of enforcement by looking solely to the record that was before that court at the time it entered that order.

## II.

In both the trial court and this court, the doctor has asserted numerous reasons why the board is not entitled to enforce its subpoena. However, they all may be classified into two general submissions.

## A.

■ First, the doctor asserts that, because of his expectation of privacy in his practice, his patient's expectation of confidentiality in their treatment records, and the general prohibition against "fishing expeditions," the board must demonstrate, when challenged, that its subpoena is justified by more than "speculation" or "conjecture." However, we conclude that, particularly in light of the specific requirements of the Act here, no such showing is required. Rather, the board is required only to demonstrate that the subpoena was issued for a lawful purpose under the procedures established by the Act.

■ The board was created by the Colorado Medical Practice Act (the Act), § 12–36–101, et seq., C.R.S. (1991 Repl.Vol. 5B), to administer its provisions. The Act provides both for the licensing and the disciplining of medical practitioners.

For this latter purpose, the Act defines "unprofessional conduct" in § 12–36–117, C.R.S. (1991 Repl.Vol. 5B). As may be relevant to the issue presented here, that definition includes:

An act or omission constituting grossly negligent medical practice or two or more acts or omissions which fail to meet generally accepted standards of medical practice, whether the two or more acts or omissions occur during a single treatment of one patient, during the course of treatment of one patient, or during the treatment of more than one patient.

Section 12–36–117(1)(p), C.R.S. (1991 Repl. Vol. 5B).

The Act also establishes procedures to be used in any disciplinary investigation. Such an investigation is commenced by a "com-

plaint in writing," which may be made by "any person or may be initiated by the board on its own motion." In either case, however, the physician "complained of" must be given written notice "of the nature of all matters complained of" and 20 days within which to respond to such complaint. It is only upon the receipt of the physician's response (or the passage of 20 days without response) that the matter is referred to an inquiry panel of the board "for investigation." Section 12–36–118(4)(a), C.R.S. (1991 Repl.Vol. 5B).

The investigation may be conducted by the inquiry panel or one or more of its members, by an independent physician, by a member of the board's staff, or by a professional investigator, as the inquiry panel may direct. Upon completion of its investigation, the inquiry panel is to determine whether further proceedings by "formal complaint" are warranted. If so, "the complaint" is referred to the Attorney General "for preparation and filing of a formal complaint." Section 12–36–118(4)(c)(IV), C.R.S. (1991 Repl.Vol. 5B). In such an instance, the filing of a formal complaint with the board will lead to an evidentiary hearing. Section 12–36–118(5), C.R.S. (1991 Repl.Vol. 5B).

The board's investigative powers in these respects include the right "in connection with any investigation (whether before or after a formal complaint is filed pursuant to section 12–36–118)" to "subpoena witnesses" and to require "the productions of books, papers, and records relevant to any inquiry or hearing." Any subpoena issued in accordance with the Act "shall be enforceable by the district court." Section 12–36–104(1)(b), C.R.S. (1991 Repl.Vol. 5B).

We shall assume, without deciding, that, in those instances in which the board has not received a complaint from another party, but desires to initiate a "complaint in writing" itself, it may engage in some pre-complaint investigation of the facts. However, we conclude that the board's authority under § 12–36–104(1)(b) to issue a subpoena "in connection with any investigation" has specific reference only to that investigation described in § 12–36–118(4). Hence, whatever authority the board may possess to conduct some investigation before initiating a complaint in writing, it is only after such a complaint is made, the subject of that complaint has been given notice of all matters complained of, and the complaint has been referred to an inquiry panel for investigation that the inquiry panel has the authority to issue an investigative subpoena.

■ However, there is no constitutional requirement that an administrative agency possess "probable cause" to believe that a statutory violation has occurred before issuing an investigative subpoena if its issuance is otherwise authorized. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Rather, as a substitute for the probable cause generally required by the Fourth Amendment, the legal justification for the issuance of such a subpoena is grounded upon a showing that: (1) the investigation is for a lawfully authorized purpose; (2) the information sought is relevant to the issues being investigated; and (3) the subpoena is sufficiently specific to obtain documents that are adequate but not excessive for the inquiry. *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980).

■ If a challenge is made to the subpoena, the burden is upon the issuing agency to demonstrate the propriety of its issuance. *People ex rel. MacFarlane v. American Banco Corp.*, 194 Colo. 32, 570 P.2d 825 (1977). And, if the agency fails to demonstrate that the subpoena issued is for an authorized purpose, the court must refuse to enforce it. *Gher v. District Court*, 183 Colo. 316, 516 P.2d 643 (1973) (because district attorney has no proper jurisdiction over civil matters, subpoena served upon school district for production of records relating to municipal annexation must be quashed).

■ Likewise, if it is demonstrated that the subpoena is designed solely to harass, *cf. Benson v. People*, 703 P.2d 1274 (Colo.1985) (noting that no harassment motive shown), or for some other improper purpose, *see People v. Fleming*, 804 P.2d 231 (Colo.App.1990), *rev'd on other grounds*, 817 P.2d 985 (Colo. 1991) (improper to issue civil subpoena under Consumer Protection Act to obtain docu-

ments for criminal prosecution), it cannot be enforced. *Gher v. District Court, supra.*

■ Therefore, to the extent that some statute may require a preliminary factual showing to be made before an investigation may be commenced, there is no general requirement that a quasi-judicial tribunal demonstrate some factual basis for the charge being investigated before that tribunal may issue its investigative subpoena. In such cases, it is not the existence of a reasonable belief that a statutory violation has occurred that serves to protect a licensee from unreasonable intrusions. It is, rather, the regularity both of the purpose and of the procedure used by the tribunal that provides such protection.

■ A physician licensed under the Act is protected from the issuance of an unreasonably intrusive subpoena by the Act's requirement of a written complaint and a written response. The review of such complaint and response allows a court to determine, first, whether the complaint raises issues properly within the jurisdiction of the board to determine and, second, whether the documents requested are relevant to those issues.

### B.

We conclude that, given the circumstances here, the board, by failing to present evidence as to the nature of its complaint, failed to establish either the regularity of its issuance or the reasonableness of its subpoena.

The board's petition to enforce its subpoena did not have attached to it the complaint in writing required by § 12–36–118(4)(a). Moreover, the board did not seek to have that complaint introduced before the trial court or to present any other evidence showing its issuance or its nature.

■ We recognize that the complaint contemplated by § 12–36–118(4)(a) need not be factually specific; it may, in appropriate instances, be general in nature, so long as it gives notice of "all matters" complained of. *See Benson v. People, supra.* However, if the nature of the complaint will determine the jurisdiction of the board to act, the board must clearly demonstrate the nature of that complaint.

■ Given the considerations discussed below, we conclude that, without a copy of the written complaint made by the board and a clear exposition of the act or omission which, if found to have occurred, would constitute unprofessional conduct, it is impossible to determine whether the purpose to be served by the subpoena is one that may properly be pursued by it. *See State Board of Nursing v. Bethesda Psychiatric Hospital,* 809 P.2d 1051 (Colo.App.1990) (administrative subpoena quashed because not authorized by governing statute).

In its court petition to enforce the subpoena, the board seems clearly to assert that mere use of the INTERRO device is considered by it to be below proper medical practice standards. Yet, in its argument to the trial court, its claim was that the use of such device would be considered improper only if any diagnosis made through its use was not confirmed by use of another accepted method of diagnosis. The trial court's conclusion was that the issue being investigated was whether any diagnosis made by the doctor through use of the device had been confirmed "by other *physicians,*" and it enforced the board's subpoena based on this conclusion. However, we can discern nowhere within this record that such was the board's complaint.

Finally, in this court, in response to the doctor's assertion that his use of the device has been in accord with appropriate federal regulations and that the board is, therefore, pre-empted from preventing its use, the board has asserted that it has no intention of "trying to determine the efficacy of this device nor [the doctor's] compliance with [the pertinent] federal regulations." It argues that, even if the device is used in accordance with these regulations, such use could, nevertheless, constitute substandard medical care. However, this does not appear to be the basis for the board's argument in the trial court, and that court did not base its order of enforcement upon such an analysis.

It is this type of confusion over the nature of the complaint and the nature of the investigation being conducted that the statute's requirement for a written complaint was de-

signed to forestall. And, such confusion becomes particularly significant here in light of the doctor's claims of pre-emption.

## C.

As we have noted previously, the board introduced no evidence before the trial court, and the trial court rejected substantially all of the evidence sought to be introduced by the doctor. Nevertheless, the parties agree that the device in question is a device intended for human use within the meaning of the Pure Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 360c (1988), and that it is a "class III" device under that statute. Such a device is one with respect to which there is insufficient information as to its safety or its effectiveness to allow it to be marketed or even to allow the promulgation of standards for its use.

Nevertheless, if such a device is intended for diagnostic purposes, federal regulations allow its use pursuant to a request for exemption, provided it meets certain requirements (such as not being invasive). It also must not be "used as a diagnostic procedure without confirmation of the diagnosis by another medically established diagnostic product or procedure." 21 C.F.R. § 812.2(2) (1992). *See* 21 U.S.C. § 360j(g) (1988).

The parties agree that an appropriate exemption has been approved for the device here.

The pertinent federal statute, 21 U.S.C. § 360k(a) (1988), also prohibits certain state action by the following provision:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under [the FDCA] to the device, and

(2) which relates to the safety and effectiveness of the device or to any other matter included in a requirement applicable to the device under [the FDCA].

Based on these statutory provisions, the doctor argues that (1) the board cannot "enforce" the federal regulations under the guise of regulating professional conduct, and (2) it

cannot label as unprofessional conduct acts that are consistent with these regulations. Thus, he argues that, whether the complaint against him is based upon the mere use of the device or upon use of the device contrary to federal regulations, the board is not authorized to investigate that complaint.

The trial court did not pass upon these issues.

We conclude, however, that, if the board's complaint against the doctor is that he has relied upon the device without obtaining a confirming diagnosis through an accepted means, the board is not barred by the federal regulations from concluding that such reliance constitutes unprofessional conduct under § 12–36–117(1)(p). The fact that the doctor's actions in such case would also violate federal regulations would not prevent the board from disciplining him under state law. Under such circumstances, the board would not be imposing any additional or inconsistent requirement upon the use of the device.

On the other hand, if the board's complaint is that the mere use of the device, although in full accord with the federal regulations, constitutes unprofessional conduct, a real question of pre-emption under the federal statute may be presented. *See Slater v. Optical Radiation Corp.,* 756 F.Supp. 370 (N.D.Ill.1991) (state common law cannot make manufacturer of intraocular lens inserted into patient's eye liable for resulting injuries if lens complied with federal law); *Hurley v. Lederle Laboratories,* 651 F.Supp. 993 (E.D.Tex.1986) (federal law pre-empts any claim that vaccine was defectively designed so long as vaccine complied with federal requirements). *See generally* Annot., *Federal Pre-emption of State Common Law Products Liability Claims Pertaining to Drugs, Medical Devices, and Other Health–Related Items,* 98 A.L.R.Fed. 124 (1992).

However, until there is placed into evidence the board's "complaint in writing" that was issued in accordance with § 12–36–118(4)(a) and any response thereto made by the doctor, it is impossible to decide this question. And, because the board failed to

present these materials to the trial court, the cause must be remanded to that court.

Upon remand, those records of the board, such as its written complaint, minutes of the board's meetings showing the complaint's adoption and its referral to an inquiry panel, and other formal materials showing whether the board has complied with the procedural requirements of the Act will be discoverable and admissible. Other materials reflecting information received by the board from other sources or with reference to other proceedings will not be.

The order enforcing the board's subpoena is reversed, and the cause is remanded to the trial court for a new hearing upon the board's motion to enforce and the doctor's motion to quash in accordance with the views set forth in this opinion.

NEY and REED, JJ., concur.