Opinion by JUDGE J. JONES
*154 ¶ 1 The State of Colorado appeals a district court's order denying its motion for an award of attorney fees and costs against respondent, Vaden Law Firm LLC (Vaden). The State's motion followed its successful effort to enforce an investigative subpoena served on Vaden pursuant to the Colorado Consumer Protection Act (CCPA), sections 6-1-101 to - 1121, C.R.S. 2014. The district court ruled that the State is not entitled to an award of attorney fees and costs under subsection 6-1-113(4), C.R.S. 2014, of the CCPA because the subpoena enforcement action is not an "action" within the meaning of that fee-shifting provision. We conclude that the district court misinterpreted the statute: the subpoena enforcement action is an "action" within the meaning of subsection 6-1-113(4). Accordingly, we vacate the district court's order and remand the case to the district court to award the State its reasonable attorney fees and costs.
I. Background
¶ 2 The State served an investigative subpoena on Vaden pursuant to subsection 6-1-108(1), C.R.S. 2014, of the CCPA seeking records pertaining to costs Vaden had sought to recover on behalf of lenders in foreclosure actions.[1] Vaden refused to produce any records.
¶ 3 The State filed an application (which it captioned a "motion") to enforce the Vaden subpoena in Denver District Court pursuant to section 6-1-109, C.R.S. 2014, which states that "the attorney general ... may apply to the appropriate district court for an appropriate order to effect the purposes of [the CCPA]." Vaden filed a written opposition to the application. Following a hearing, the district court ruled against Vaden, and ordered it to produce records responsive to the subpoena.[2]
¶ 4 The State moved for an award of attorney fees and costs against Vaden pursuant to subsection 6-1-113(4), which states: "Costs and attorney fees shall be awarded to the attorney general or a district attorney in all actions where the attorney general or the district attorney successfully enforces this article."
¶ 5 The district court denied the motion. It reasoned that "all actions" in subsection 6-1-113(4) refers to the term "civil action" in subsections 6-1-112(1) and -113(1), and that an application to enforce an investigatory subpoena is not a "civil action." The court further justified its conclusion by analogy to procedure applicable to grand jury subpoenas and by reference to People ex rel. MacFarlane v. American Banco Corporation, 194 Colo. 32, 570 P.2d 825 (1977), a case involving the constitutionality of the CCPA's grant of authority to the Attorney General to issue investigatory subpoenas thereunder.
II. Discussion
¶ 6 The State contends that the district court's order is contrary to the plain language of subsection 6-1-113(4). We agree with the State.
A. Standard of Review and Applicable Law
¶ 7 Resolving the State's contention hinges on the meaning of a statutory phrase-"all actions." We determine the meaning of that phrase de novo. Weinstein v. Colborne Foodbotics, LLC, 2013 CO 33, ¶ 8, 302 P.3d 263 ; Associated Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n, 2012 CO 28, ¶ 11, 275 P.3d 646.
¶ 8 When interpreting a statute, we must strive to discern and give effect to the General Assembly's intent. Hassler v. Account Brokers of Larimer Cnty., Inc., 2012 CO 24, ¶ 15, 274 P.3d 547 ; Krol v. CF & I Steel, 2013 COA 32, ¶ 15, 307 P.3d 1116. We look first to the language of the statute: we give the words and phrases used therein their plain and ordinary meanings; and we read the statutory language in the dual contexts of the statute as a whole and the comprehensive *155 statutory scheme. See Hassler, ¶ 15 ; Jefferson Cnty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo. 2010) ; Krol, ¶ 15. And we must take care to give consistent, harmonious, and sensible effect to all of the statute's language. Gerganoff, 241 P.3d at 935 ; Krol, ¶ 15. After doing all this, if we determine that the language at issue is unambiguous, we enforce the statute as written and do not resort to other rules of statutory construction. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1089 (Colo. 2011) ; Krol, ¶ 15.
B. Analysis
¶ 9 Subsection 6-1-113(4) requires an award of attorney fees and costs in "all actions" in which the Attorney General "successfully enforces this article." We conclude that it unambiguously requires an award of attorney fees and costs in favor of the State when the State successfully enforces an investigative subpoena pursuant to the procedure dictated by section 6-1-109. This is so for at least three reasons.
¶ 10 First, the term "action" is commonly understood as " 'a proceeding on the part of one person, as actor, against another, for the infringement of some right of the first, before a court of justice, in the manner prescribed by the court or law.' " Hernandez v. Downing, 154 P.3d 1068, 1070 (Colo. 2007) (quoting Clough v. Clough, 10 Colo.App. 433, 439, 51 P. 513, 515 (1897) ); see also Black's Law Dictionary 35 (10th ed. 2014) (defining "action," as relevant here, as "[a] civil or criminal judicial proceeding"). This broad definition clearly encompasses a proceeding by the Attorney General alleging infringement of the State's right under the CCPA to obtain information by subpoena from another person in the manner prescribed by law (i.e., section 6-1-109 ).
¶ 11 We note that subsection 6-1-107(1)(d), C.R.S. 2014, expressly characterizes such proceedings as "actions." § 6-1-107(1)(d) (authorizing the Attorney General to make copies of documents and offer such copies into evidence "in actions brought pursuant to sections 6-1-109 and 6-1-110").[3] Though Vaden posits that the General Assembly "was just a tad sloppy with its language in section 6-1-107," we must presume to the contrary. "In interpreting statutory language, we presume that the legislature did not use language idly." Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1010 (Colo. 2008) ; accord Carlson v. Ferris, 85 P.3d 504, 509 (Colo. 2003). We therefore presume that the General Assembly intended proceedings pursuant to section 6-1-109 to be regarded as "actions."
¶ 12 Second, subsection 6-1-113(4) does not contain any language limiting the "actions" to which it applies, except that the action must be one to enforce the CCPA. To the contrary, it expressly requires awards of attorney fees and costs in "all actions" where the Attorney General "successfully enforces this article ." § 6-1-113(4) (emphasis added). Contrary to the district court's conclusion, nothing in the text of section 6-1-113 limits subsection (4) to "civil actions" pursuant to subsection 6-1-112(1), C.R.S. 2014, or subsection 6-1-113(1).[4] Although subsection 6-1-112(1) authorizes the Attorney General to bring a civil action to recover civil penalties, nothing therein or elsewhere in article 1 of title 6 indicates that subsection 6-1-113(4) is limited to such actions. Subsection 6-1113(1)
*156 authorizes civil actions by private persons, and is clearly inapplicable to the Attorney General in any event.[5] Therefore, it cannot limit the application of subsection (4).
¶ 13 Vaden, distancing itself somewhat from the district court's reasoning, concedes that subsection 6-1-113(4) could also apply to actions pursuant to section 6-1-110, C.R.S. 2014 (authorizing the Attorney General to "apply for and obtain, in an action in the appropriate district court ... a temporary restraining order or injunction, or both") (emphasis added), or under section 6-1-114, C.R.S. 2014 (authorizing criminal prosecution for certain violations of the CCPA), but argues that only those additional actions qualify under subsection 6-1-113(4). However, as noted, an action to enforce an investigative subpoena pursuant to section 6-1-109 is an "action" according to the plain meaning of that term. And subsection 6-1-113(4) applies to "all actions."
¶ 14 Third, the General Assembly used different terms in subsections 6-1-112(1) and -113(1) on the one hand ("civil action"), and subsection 6-1-113(4) on the other hand ("actions"). This use of different terms "signals an intent on the part of the General Assembly to afford those terms different meanings." Robinson, 179 P.3d at 1010 ; accord, e.g., Bd. of Cnty. Comm'rs v. City of Woodland Park, 2014 CO 35, ¶ 10, 333 P.3d 55 ; Colo. Oil & Gas Conservation Comm'n v. Grand Valley Citizens' Alliance, 2012 CO 52, ¶ 13, 279 P.3d 646. "Actions" is clearly a broader term than "civil action," and consequently we afford it a broader meaning consistent with the entire statutory scheme.
¶ 15 For these reasons, we conclude that section 6-1-113(4) unambiguously requires an award of attorney fees and costs in the State's favor when it successfully enforces its right to subpoena information pursuant to sections 6-1-108 and -109.[6]
¶ 16 We are not persuaded to the contrary by Vaden's other arguments or the district court's rationale.
¶ 17 Vaden contends that there is a distinction between an "application," see § 6-1-109(1) (the Attorney General "may apply to the district court for an appropriate order" to enforce a subpoena issued pursuant to section 6-1-108), and an "action," see § 6-1113(4). There is a distinction, but not one that makes a difference to the outcome.
¶ 18 As noted, an action is a court proceeding by one party to enforce a right against another party. Such a proceeding may be instituted by filing and serving a document specified by rule or statute. Such a document may be called, to cite a few examples:
• a "complaint," see, e.g., § 16-5-101(1)(c), C.R.S. 2014 (a civil complaint); C.R.C.P. 3(a) (same) ; C.R.C.P. 106(a)(4)(II) (challenge to judicial or quasi-judicial action of "any governmental body or officer or any lower judicial body"); Crim. P. 3(a) (criminal action); Crim. P. 4(b)(1) (criminal action);
• an "indictment," see § 16-5-101(1)(a) (criminal action);
• an "information," see § 16-5-101(1)(b) (criminal action);
• a "petition," see, e.g., § 14-10-107(2), C.R.S. 2014 (dissolution of marriage); § 19-3-501(1), C.R.S. 2014 (dependency and neglect); § 19-2-512(1), C.R.S. 2014 (delinquency);
*157 • or a "motion," see C.R.C.P. 120(a) (order authorizing sale of real property).
¶ 19 Whatever the operative document is called, the effect is the same-an action is instituted. The character of the proceeding as an "action" is unaffected by the title of the operative document which commences the action.
¶ 20 Nor, contrary to Vaden's suggestion, does it matter that an application pursuant to section 6-1-109 is not subject to the Colorado Rules of Civil Procedure pertaining to the filing of complaints, service of process, and the filing of answers and responsive pleadings. See Feigin v. Colo. Nat'l Bank, N.A., 897 P.2d 814, 819-20 (Colo. 1995) (administrative subpoena issued by the Colorado Securities Commissioner pursuant to statute not subject to such provisions); People ex rel. Orcutt v. Dist. Court, 164 Colo. 385, 390-93, 435 P.2d 374, 376-78 (1967) (administrative subpoena issued by the Commissioner of Agriculture pursuant to statute not subject to rules of civil procedure). The General Assembly is free, of course, to require the use of particular procedures for particular statutory proceedings. See C.R.C.P. 81 (stating that the rules of civil procedure do not apply to "any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute"). It does not follow that if, as in this case, the General Assembly does so, the statutory proceeding is not an "action," as that term is commonly understood. What matters is whether, through the proceeding, one party seeks enforcement of a right against another party in court in a manner prescribed by the court or law. See Hernandez, 154 P.3d at 1070. As discussed, the proceeding at issue passes that test.
¶ 21 To the extent Vaden contends that a proceeding pursuant to section 6-1-109 is not an "action" because there is no right to a jury trial, we reject that contention. It is simply beyond question that not every action-not even every "civil action"-carries with it the right to a jury trial. For instance, in a civil action seeking only equitable relief, there is no right to a jury trial. E.g., Am. Family Mut. Ins. Co. v. DeWitt, 218 P.3d 318, 322 (Colo. 2009) ; Watson v. Pub. Serv. Co., 207 P.3d 860, 865 (Colo. App. 2008) ; FDIC v. Mars , 821 P.2d 826, 830 (Colo. App. 1991).
¶ 22 The district court relied on Crim. P. 17(c), which governs the prosecution's ability to subpoena documents and objects in criminal cases, and on American Banco, which addressed the constitutionality of the CCPA's investigative subpoena provision by, in part, discussing procedures for issuance of grand jury subpoenas in criminal cases. Vaden relies on that rule and American Banco as well. That reliance is misplaced.
¶ 23 Contrary to the district court's rationale and Vaden's assertion, there would be nothing "anomalous" about awarding attorney fees and costs in a CCPA subpoena merely because Crim. P. 17(c) does not provide for such an award. The two provisions were adopted by different branches of government. The General Assembly was not constrained by the Colorado Supreme Court's choice and, in any event, addressed different proceedings involving different considerations.[7] The General Assembly could rationally have determined that mandating an award of attorney fees and costs in a CCPA subpoena enforcement action was advisable to deter noncompliance with valid investigative subpoenas.
¶ 24 American Banco is simply inapposite. In that case, a bank challenged the Attorney General's authority to issue and enforce an investigative subpoena pursuant to sections 6-1-108 and -109, claiming that the statutory process violated its constitutional right to be free from unreasonable searches and seizures. In rejecting that argument, the supreme court said that "the protections afforded persons served with an attorney general's subpoena [pursuant to section 6-1-108] are as full and as meaningful as those afforded persons served with a grand jury subpoena." 194 Colo. at 38, 570 P.2d at 829. In saying that, the court was *158 expressly referring to procedures available to the party served with the subpoena to object and seek judicial review. Id. The court in no way opined on the different issue of awarding attorney fees and costs.[8]
¶ 25 And, contrary to the district court's conclusion, mandating an award of attorney fees to the State in this context does not put a subpoenaed party in a "Catch-22" or "no-win" situation. A party having a valid objection to a subpoena is not required to pay the State's attorney fees and costs. Nor is a party that lacks a valid objection and complies with a subpoena, thereby obviating the need for an action pursuant to section 6-1-109. Though a party that does not have a valid objection and fails to comply with a subpoena is required to pay the State's attorney fees and costs if the State proceeds pursuant to section 6-1-109, the General Assembly's policy judgment that such a prospect would serve as a deterrent to unjustified refusals hardly leaves a subpoenaed party without options, and is, in any event, beyond our authority to question. See City of Montrose v. Pub. Utils. Comm'n, 732 P.2d 1181, 1193 (Colo. 1987) ("[I]t is not within the purview of this court to question the legislature's choice of policy.").
III. Conclusion
¶ 26 The district court's order is vacated and the case is remanded to the district court for a determination of the State's reasonable attorney fees and costs to be awarded against Vaden.[9]
JUDGE FURMAN and JUDGE FOX concur.

Subsection 6-1-108(1), C.R.S. 2014, provides that the Attorney General "may issue subpoenas to require ... the production of documents ... in aid of any investigation or inquiry" under the CCPA.

The court consolidated the Vaden action with other subpoena enforcement actions. Those other actions are not at issue in this appeal.

Similarly, subsection 6-1-110(1), C.R.S. 2014, allows the Attorney General to "apply for" a temporary restraining order or injunction (or both) and thereby commence "an action." Vaden attempts to distinguish subsection 6-1-110(1) on the basis that an injunction is "akin to a final judgment." But section 6-1-109, C.R.S. 2014, the statute pursuant to which the State filed its enforcement application, also allows the court to grant injunctive relief. § 6-1109(1)(a). And, in any event, Vaden's proposed distinction does not account for the commonly understood meaning of "action," discussed above.

Section 6-1-113, C.R.S. 2014, has several subsections, but addresses two different issues. Subsections (1)-(2.7) address private civil actions-who may bring one and what damages may be recovered. Subsections (3) and (4) are fee-shifting provisions. The former allows an award of attorney fees and costs to a "defendant" when "[a]ny person ... brings an action under this article that is found by the court to be groundless and in bad faith or for the purpose of harassment...." The latter, at issue in this case, allows an award of attorney fees and costs to the State. The structure of section 6-1-113 does not indicate that the scope of subsection (4) is limited by any other subsection.

Subsection 6-1-113(1) provides:
The provisions of this article shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article. An action under this section shall be available to any person who:
(a) Is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice, or is a residential subscriber, as defined in section 6-1-903(9), who receives unlawful telephone solicitation, as defined in section 6-1-903(10); or
(b) Is any successor in interest to an actual consumer who purchased the defendant's goods, services, or property; or
(c) In the course of the person's business or occupation, is injured as a result of such deceptive trade practice.

Having concluded that subsection 6-1-113(4) unambiguously requires an award of attorney fees and costs to the State when it successfully enforces an investigative subpoena pursuant to section 6-1-109, we do not apply other rules of statutory construction.

The General Assembly adopted subsection 6-1-113(4) in 1987. Ch. 42, sec. 9, § 6-1-113(4), 1987 Colo. Sess. Laws 360.

The court referred to the proceeding under section 6-1-109 as an "action." People ex rel. MacFarlane v. Am. Banco Corp., 194 Colo. 32, 35, 570 P.2d 825, 827 (1977) ("This action arises out of an investigation conducted by the attorney general's office...."); see also Cash Advance & Preferred Cash Loans v. State, 242 P.3d 1099, 1102, 1103, 1108 (Colo. 2010) (repeatedly referring to such a proceeding as an "action").

We note the sarcastic tone of footnote 4 of Vaden's answer brief. Sarcasm directed at another party has no legitimate place in an appellate brief. See Martin v. Essrig, 277 P.3d 857, 860-61 (Colo. App. 2011).